IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TERESA GIVENS and LLOYD
GIVENS,

                              Plaintiffs,

        v.                                              1:03-cv-3367-WSD

WAFFLE HOUSE, INC.,

                              Defendant.

## ORDER

This matter is before the Court on Defendant Waffle House, Inc.'s

("Defendant") Motion for Summary Judgment [107].[1]  Plaintiffs Teresa and Lloyd

Givens ("Plaintiffs"), and their sixteen-year-old son, Nicholas Givens (collectively

---

[1]  Also before the Court are Defendant's Notice of Objection to Admissibility
of Evidence [135], Defendant's Notice of Supplemental Authority [142],
Defendant's Notice of Additional Factual Development and Motion for Leave to
Supplement the Record [143, 144], Plaintiffs' Opposition to Defendant's Motion
for Leave to Supplement the Record [146], Plaintiffs' Motion for Leave to
Supplement Plaintiffs' Summary Judgment Opposition Record [147], Defendant's
Consolidated Reply in Support of its Motion for Leave to Supplement the Record
and Response to Plaintiffs' Motion for Leave to Supplement [148], Plaintiffs'
Supplementation of Plaintiffs' Summary Judgment Opposition Record with
Testimony from the Deposition of Debbie S. Phillips [157] and Defendant's Notice
of Additional Factual Development and Supplementation of the Summary Judgment
Record [158].

the "Givens"), all of whom are African-American, claim they were discriminated against and denied service at Waffle House Restaurant #960 in Marietta, Georgia. Plaintiffs bring claims against Defendant for alleged discrimination in public accommodations under 42 U.S.C. § 1981 and 42 U.S.C. § 2000a.

## I.   BACKGROUND

On November 4, 2001, at approximately 7:00 p.m., the Givens entered the Marietta Waffle House for a dine-in meal.[2]  (Def.'s Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J. ("DSF") ¶ 1.)  The Givens observed two servers -- Debra Phillips and Stephanie Wells -- and a grill cook working that evening, all of whom were white.  (Id. ¶¶ 6, 22.)  On the left side of the restaurant, there were four or five tables which were all full when the Givens arrived, and, as far as Plaintiffs could see, there were no clean tables in the restaurant.  (Id. ¶¶ 12-14.)  There were also six or seven bar stools at a counter, of which at least three were empty.  (Id. ¶¶ 18, 20.)

---

[2]  The only witnesses with any recollection of the relevant events of November 4, 2001, are the Plaintiffs and their son.  None of the Waffle House employees allegedly involved remember the Givens or their visit to the restaurant. Plaintiffs' and their son's versions of events that evening differ in several material respects.  The Court, however, will view the facts in the light most favorable to Plaintiffs.

After entering the restaurant, the Givens stood in the area of the beverage stand near the register to wait for a table.  (DSF ¶ 2.)  The older of the two servers on duty walked between Plaintiffs on three occasions while they were standing near the register.  (Id. ¶ 27.)  None of the Givens attempted to speak to or signal any Waffle House employee while waiting for a table.  (Id. ¶¶ 10, 54.)  Ms. Givens commented to her husband that the servers appear to be "really busy."  (Id. ¶ 34.)

After the Givens waited near the register for between fifteen to thirty-five minutes, and after the older server had passed by the Givens a second time, a customer sitting at the counter, a former Waffle House employee, offered to take the Givens' to-go orders.  (DSF ¶¶ 29, 33, 35-37; Pls.' Resp. to DSF ¶ 37.)  The Givens gave him their to-go orders, and after the customer relayed the Givens' orders to the grill cook, the grill cook began preparing the Givens' orders in an appropriate amount of time.[3]  (DSF ¶¶ 38-39.)

About twenty to thirty-five minutes after the Givens entered the restaurant, and around the time the Givens placed their to-go orders with the former Waffle

---

[3]  Plaintiffs have no complaint regarding the grill cook.  (DSF ¶ 40.)

House employee, a white man and a young girl entered the restaurant together.[4]
(DSF ¶¶ 55, 56.)  The white man asked the Givens if they were waiting in line, and
Mr. Givens responded "We've already placed our order."  (Id. ¶¶ 58, 59.)  The
Givens disagree about the servers' interaction with these two white customers.  Mr.
and Ms. Givens testified that a server greeted the two white customers at
approximately the same area where the Givens were waiting.  (Pls.' Resp. to DSF
¶¶ 60-61.)  The Givens' son testified the white customers walked to "the edge of
the counter," and a server met them there, about ten to fifteen steps from where the
Givens were standing.  (DSF ¶¶ 60-61; Pls.' Resp. to DSF ¶ 60; Nicholas Givens
Dep. Tr. at 237, 250.)  The parties agree that a server took the two white customers
to a table and cleaned it off for them.  These were the only people to enter the
restaurant while the Givens were there.

  The grill cook placed the Givens' orders in a to-go box, which a server
placed in a bag along with the Givens' drinks.  (DSF ¶¶ 41-45.)  The server rang up
the order, Ms. Givens handed her payment to the server, and the server gave Ms.

_____

  [4] The Givens give contradictory testimony regarding when the two white
customers entered the restaurant.  Mr. and Ms. Givens believe they entered the
restaurant soon after the Givens placed their orders; their son believes they entered
before the Givens placed their orders.  (DSF ¶ 55; Pls.' Resp. to DSF ¶ 55.)

Givens her change.  (Id. ¶¶ 47-50.)  The Givens were in the restaurant for a total of between forty and sixty minutes.  The Givens ate their meals at home and did not have any problems with their food.  (Id. ¶¶ 52-53.)

The Givens never complained to anyone at the restaurant about their experience.  The day after the incident, Ms. Givens called Waffle House's corporate headquarters to get information about company management and the particular unit her family had visited, so she could send a letter of complaint about the visit.  (DSF ¶¶ 64-66.)  The Waffle House employee who answered her call gave Ms. Givens the information she requested.  (Id.)  Ms. Givens did not complain about her experience during this phone call, and the Waffle House employee told Ms. Givens if she has a letter of complaint she should send it to customer service.  (Id. ¶ 67.)  Ms. Givens ultimately decided not to send her complaint to Waffle House.  (Pls.' Resp. to DSF ¶ 68.)

Plaintiffs met with an attorney regarding their visit to the restaurant and planned to file a lawsuit soon after November 4, 2001.  (DSF ¶ 71.)  Plaintiffs decided not to pursue their claims until they filed this action on November 4, 2003. (Id. ¶ 72.)  Plaintiffs bring claims against Defendant for alleged public accommodation discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 2000a,

seeking $300,000 in compensatory damages, punitive damages, and injunctive relief.

## II.   DISCUSSION

### A.   Procedural Motions

#### 1.   *Evidentiary objections*

Defendant filed a Notice of Objection to Admissibility of Evidence [135] regarding Plaintiffs' evidence of (i) customer complaint files from Unit 960, (ii) affidavits of former Waffle House employees Danita Kasinger, Barbara Ann Hale, Jesse Gantt, Jr., and Bianca Taylor, and (iii) an internal Waffle House investigation correspondence template.  On a motion for summary judgment, the Court may consider only evidence which will be admissible at trial.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  Accordingly, the Court first will address Defendant's evidentiary objections.

##### a.   Customer complaint files

Plaintiffs seek to introduce selected customer complaint files for the Waffle House restaurant at issue here.  (<u>See</u> Customer Complaints, attached as Exs. 6-13 to Decl. of Jason E. Pauls.)  Plaintiffs claim these complaints indicate Waffle House management was aware of multiple allegations of discrimination, and that Waffle

House determined that each allegation of discrimination was false. The customer complaints demonstrate there were eight (8) complaints of discriminatory conduct from the particular Waffle House restaurant Plaintiffs visited. One of the eight complaints involved a customer complaining that black customers were being served before white customers. (See Ex. 6 to Decl. of Jason E. Pauls.) The eight complaints occurred between 1999 and 2004, do not involve any of the Waffle House employees working at the time of the Givens' visit, and do not involve Plaintiffs. In light of the thousands of transactions occurring at the Waffle House during this time period, Plaintiffs' selected isolated and sporadic allegations, involving employees other than those on duty at the time the Givens visited the restaurant, are not relevant to whether Plaintiffs were discriminatorily denied dine-in service at the restaurant or that management was aware of systemic discrimination at Waffle House generally, or at the restaurant at issue specifically. The complaints are, therefore, inadmissible. See Fed. R. Evid. 401, 402; see also Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1220-21 (5th Cir. 1995).[5]

_____

[5] Even assuming the complaints are relevant, even marginally, the probative value of these few discreet, disparate customer complaints occurring over an extended period, in excess of five (5) years, is far outweighed by the danger of unfair prejudice which would result from introduction of this evidence, and thus the

b.    Affidavits of former Waffle House employees

Plaintiffs proffer affidavits from several former Waffle House employees, claiming they demonstrate discriminatory behavior by Waffle House employees, Waffle House's failure to discipline discriminatory behavior, and general discriminatory practices at Waffle House.  (See Exs. 15-19 to Decl. of Jason E. Pauls.)  Like the customer complaint files discussed above, these affidavits are not relevant to the ultimate question in this case -- whether Waffle House discriminatorily denied Plaintiffs dine-in service.  The affiants do not have any information concerning the Plaintiffs or their experiences at Waffle House restaurants, and their testimony concerns different employees, restaurants, factual circumstances and time periods than those at issue in this case.[6]  Danita Kasinger, Barbara Ann Hale, Jesse Gantt, Jr., and Bianca Taylor simply do not have any information relevant to this particular lawsuit and their affidavits are irrelevant,

---

evidence is alternatively inadmissible under Federal Rule of Evidence 403.

[6]  Two of the former employees, Ms. Kasinger and Ms. Hale, complain of a particular cook's racial animus at a Cartersville, Georgia Waffle House, and further complain about Waffle House's investigation of this employee.  The other two former employees, Mr. Gantt and Ms. Taylor, complain of discriminatory hiring practices at Waffle House.

unduly prejudicial, and inadmissible in this action.[7]  See Fed. R. Evid. 401, 402,

403; see also Earley v. Champion Int'l Corp., 907 F.2d 1077, 1084-85 (11th Cir.

1990).[8]

       2.    *Supplementation of the record*

     Both parties filed pleadings to supplement the evidentiary record, including

Defendant's Notice of Additional Factual Development and Motion for Leave to

Supplement the Record [143, 144], Plaintiffs' Opposition to Defendant's Motion

for Leave to Supplement the Record [146], Plaintiffs' Motion for Leave to

Supplement Plaintiffs' Summary Judgment Opposition Record [147], Defendant's

Consolidated Reply in Support of its Motion for Leave to Supplement the Record

---

    [7] Plaintiffs also did not properly identify Ms. Kasinger, Ms. Hale, Mr. Gantt or Ms. Taylor as witnesses; this provides an alternative basis for excluding their affidavits from consideration.  See Fed. R. Civ. P. 26(a), 37(c)(1).

    [8] Defendant also objects to the admissibility of an internal Waffle House correspondence template.  (See Ex. 14 to Decl. of Jason E. Pauls.)  Plaintiffs claim the template is relevant because it "did not even include an option for indicating that discrimination had, in fact, been identified."  (Pls.' Opp'n to Def.'s Mot. for Summ. J. at 21 n.18.)  Plaintiffs do not identify the context of when or if the template, which appears to be a guide for responding to complaints of discrimination or poor service, is used by Waffle House employees.  Absent such context, the template is not helpful in determining whether Plaintiffs were discriminatorily denied dine-in service at the restaurant, particularly in this case in which it is undisputed that Plaintiffs never filed a complaint about their experience prior to filing this action.  Introduction of it would be misleading and prejudicial.

and Response to Plaintiffs' Motion for Leave to Supplement the Summary

Judgment Opposition Record [148], Plaintiffs' Supplementation of Plaintiffs'

Summary Judgment Opposition Record with Testimony from the Deposition of

Debbie S. Phillips [157], and Defendant's Notice of Additional Factual

Development and Supplementation of the Summary Judgment Record [158].

     Defendant moves for leave to supplement the record with testimony from the

June 30, 2005 deposition of Stephanie Wells, a former Waffle House server who

was working at the unit Plaintiffs visited on the night of their visit.  (Def.'s Mot. to

Supplement the Record [143].)  Plaintiffs oppose Defendant's motion, arguing

Defendant has not shown why the "material should be allowed into the record at

this late date and to the prejudice of Plaintiffs, whom Waffle House refused to

allow to similarly supplement the summary judgment record."  (Pls.' Opp'n to

Def.'s Mot. to Supplement the Record [146] at 1-2.)  In the alternative, Plaintiffs

request the opportunity to propose additional deposition designations to

supplement the summary judgment record, (id. at 3), and move for leave to

supplement the record.  (See Pls.' Mot. to Supplement the Record [147].)

     It is undisputed that neither party was able to locate Ms. Wells during the

discovery period.  In light of her obvious relevance to this proceeding as one of the

two servers working when Plaintiffs visited the Waffle House,[9] and Defendant's

representation that it was unable to locate Ms. Wells at an earlier time, the Court will

allow both parties to supplement the record with Ms. Wells' deposition

testimony.[10]

    B.    Summary Judgment Standard

    Summary judgment is appropriate where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

party seeking summary judgment bears the burden of demonstrating the absence of

a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d

1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-

---

    [9]  Furthermore, on October 13, 2005, the Court allowed the parties to take
the deposition of Debra Phillips, the other server who was working at the Waffle
House at the time of Plaintiffs' visit.  The parties have each supplemented the
record with excerpts of her deposition testimony, (Pls.' Supplementation of Summ.
J. Opp'n Record [157]; Def.'s Notice of Add'l Factual Development and
Supplementation of the Summ. J. Record [158]), and the Court will consider her
testimony when deciding Defendant's Motion for Summary Judgment.

    [10]  It is disconcerting in these circumstances that a party would seek to deny
the Court access to witnesses alleged to be present when the incident occurred.

movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor. United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

C.    Section 1981 Claims

Section 1981 provides:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) . . . For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) . . . The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.  A plaintiff asserting a § 1981 claim must prove that the defendant failed to perform a contractual obligation as a result of intentional discrimination on the basis of race.  See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982).

In public accommodation cases, where a plaintiff does not proffer direct evidence of intentional discrimination, courts apply the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Brown v. Am. Honda Motor Co., Inc., 939 F.2d 946, 949 (11th Cir. 1991); Laroche v.

-**13**-

Denny's, Inc., 62 F. Supp. 2d 1375, 1382 (S.D. Fla. 1999); Slocumb v. Waffle

House, Inc., 365 F. Supp. 2d 1332, 1337-38 (N.D. Ga. 2005).  Under this analysis,

a plaintiff first must establish a *prima facie* case of discrimination, which permits an

inference of discrimination.  McDonnell Douglas Corp., 411 U.S. at 802.  Once

plaintiff establishes a *prima facie* case, the burden of production shifts to

defendant to demonstrate a legitimate, nondiscriminatory reason for the adverse

action.  Id.  If the defendant meets this burden, the burden shifts back to plaintiff to

then present sufficient evidence to demonstrate that the proffered reason is merely a

pretext for discrimination.  Id.

      1.    *Prima Facie Case*

To establish a *prima facie* case under § 1981, a plaintiff must prove:

> (1) that [plaintiff] is a member of a protected class; (2)
> that the allegedly discriminatory conduct concerned one
> or more of the activities enumerated in the statute; *i.e.*, the
> making, performance, modification, or termination of
> contracts, or the enjoyment of all benefits, privileges,
> terms, and conditions of the contractual relationship; and
> (3) that the defendants treated the plaintiff less favorably
> with regard to the allegedly discriminatory act than the
> defendants treated other similarly situated persons who
> were outside plaintiff's protected class.

Benton v. Cousin Props., Inc., 230 F. Supp. 2d 1351, 1370 (N.D. Ga. 2002);

Slocumb, 365 F. Supp. 2d at 1338.  The first prong of the *prima facie* analysis is

not at issue here because Plaintiffs are African-American.  Defendant's principal

argument is that Plaintiffs cannot satisfy the second and third elements of their

*prima facie* case because Plaintiffs cannot show (1) that they attempted to contract

for services or were denied the full benefits and enjoyment of a public

accommodation, and (2) that any similarly situated non-African-American

customers received more favorable treatment than Plaintiffs.

        a.     Denial of the full benefits and enjoyment of a public
               accommodation

Defendant claims Plaintiffs cannot demonstrate the second element of the

*prima facie* case because they "never sought or requested dine-in service despite

ample opportunity to do so."  (Def.'s Mot. for Summ. J. at 6.)  Defendant argues

that Plaintiffs "mutely and resolutely stood in the one spot Waffle House reserves

for patrons to place to-go orders," experienced a delay in service, placed to-go

orders, and ultimately received satisfactory food.  (Id. at 6-9.)  Defendant also

claims that Plaintiffs rejected available seating because they did not want to sit at the

counter.  (Def.'s Reply in Supp. of Mot. for Summ. J. at 2.)

Plaintiffs have presented evidence that they waited to be seated, desired to eat at the restaurant at a table, waited for about thirty minutes to be served, and no member of the Waffle House staff helped or even acknowledged them.  Plaintiffs present evidence that no member of the restaurant staff ever took their order, either at a table or even as a take-out customer, and their take-out food orders were finally taken only because a customer sitting at the counter placed their orders with the grill cook.  Viewing the evidence and inferences in the light most favorable to Plaintiffs, the facts are that the Givens, by waiting to be seated at the restaurant for nearly half an hour, attempted to contract for services, and Defendant, by ignoring the Givens, potentially violated Plaintiffs' contractual rights by refusing to sell them food they intended to purchase, and denied Plaintiffs the full benefit and enjoyment of dine-in service because of their race.  That counter seating was available, or that the Givens ultimately received satisfactory to-go orders, does not urge a different conclusion.[11]

---

[11]  In <u>Dozier v. Waffle House, Inc.</u>, 1:03-cv-3093-ODE, at 13-14 (N.D. Ga. May 4, 2005) (Evans, J.), the Court found the Waffle House staff's failure to greet and seat the plaintiffs upon their arrival, and a delay of service, did not constitute a violation of plaintiffs' civil rights.  In <u>Dozier</u>, the plaintiffs waited between one and twenty minutes before seating themselves, and the Court found that mere bad service did not amount to a denial of the full benefits and enjoyment of a place of public accommodation.  In the case before the Court, Plaintiffs never received dine-in service, waited significantly longer before any service was provided, and the

Plaintiffs here claim they were discriminatorily denied their right to contract for table-seated service; they satisfy, albeit barely, the second element of the *prima facie* test.

> b.    Similarly-situated persons

Defendant argues Plaintiffs cannot establish the third prong of their *prima facie* case because no similarly-situated white patrons were treated better than Plaintiffs.  "While the comparators need not be identical to Plaintiffs to demonstrate Plaintiffs were treated less favorably than those outside Plaintiffs' protected class, 'there should be a reasonably close resemblance of facts and circumstances.'" Slocumb, 365 F. Supp. 2d at 1339 (quoting Lizardo v. Denny's, Inc., 270 F.3d 94 (2d Cir. 2001) (citation omitted)).  Defendant claims the white man and girl who entered the restaurant are not similar to Plaintiffs because (i) they entered the restaurant after Plaintiffs' to-go orders were placed with the cook, and (ii) they did not stand silently near the cash register but instead walked halfway across the restaurant towards a vacant table.  (Def.'s Mot. for Summ. J. at 11.)

---

service they received was from a customer and not a server.  Unlike in Dozier, in this case, the Court cannot find as a matter of law that Plaintiffs' alleged treatment was merely the result of poor service.

Defendant claims the white customers walked halfway through the restaurant before they were greeted by the Waffle House employee, thus distinguishing them from the Givens who stood near the register.  However, Plaintiffs' testimony is that the white customers were greeted as they entered the restaurant, in an area close to where the Givens had been waiting.  Although Plaintiffs' son testified the white customers walked through the restaurant before being greeted, and the testimony of individual Plaintiffs is somewhat confusing, the Court must view the evidence in the light most favorable to Plaintiffs.

Plaintiffs have presented evidence that while they were waiting to be seated, two white customers entered the restaurant.  When they entered, two things happened.  They were greeted, something the undisputed evidence shows never happened to the Plaintiffs, and they were seated at a table while Plaintiffs were not.  Only twenty to thirty-five minutes separated the two parties, and the same servers were working when both parties entered the restaurant.  The time difference and that the white couple may have moved away from the counter towards the right-hand side table seating area are facts that distinguish the situations of these two customer groups.  These differences, and that Plaintiffs rely on only one comparator "incident" to meet the third prong of the *prima facie* test, may indicate

significant proof weaknesses in Plaintiffs' case.  However, the Court is required to

view the evidence in the light most favorable to Plaintiffs and to resolve all

reasonable doubts in favor of the Plaintiffs.  Applying this standard,  the Court

concludes the facts here are sufficient, again albeit barely, to find the white

customers who entered the Waffle House after the Givens were reasonably similar

to the Givens.[12]  Plaintiffs have therefore produced sufficient evidence that

Defendant treated Plaintiffs less favorably than the Defendant treated other

similarly-situated persons who were outside Plaintiffs' protected class.

Accordingly, the Court finds that Plaintiffs have established a *prima facie*

case of intentional race discrimination.

_____

[12]  Defendant cites Wang v. N.Y.C. Dep't of Finance, No. 96-cv-5170, 1999
WL 529550, *18 (E.D.N.Y. July 21, 1999), for the proposition that a plaintiff is not
similarly situated to an alleged comparator where conduct at issue occurred at
different times.  Wang, an unreported case from the Eastern District of New York,
involved a plaintiff claiming she was denied a promotion on the basis of her race.
The plaintiff in Wang attempted to compare her job performance during one time
period with that of another employee during a different time period.  The court
found the alleged comparator was not substantially similar to plaintiff because
plaintiff failed to show the comparator's productivity was similar to plaintiff's
during the same time periods and under the same supervisor.  Defendant's citation
to Wang to demonstrate that the white customers were not similar to Plaintiffs is
not persuasive.

2.      *Legitimate, Nondiscriminatory Reason*

Once a plaintiff establishes a *prima facie* case of race discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action.  Defendant's burden to demonstrate a legitimate, nondiscriminatory reason for its actions is "exceedingly light."  <u>See</u> <u>Batey v. Stone</u>, 24 F.3d 1330, 1334 (11th Cir. 1994) (citation and quotation omitted).  The Defendant's burden is only of production; it is not a burden of proof.  <u>See</u> <u>Lee v. Russell County Bd. of Educ.</u>, 684 F.2d 769, 773 (11th Cir. 1982).

Here, Defendant claims the Plaintiffs' delay in service was because the restaurant was "understaffed during an extremely busy shift" when Plaintiffs entered.  Defendant points to evidence to support this claim.  (Def.'s Mot. for Summ. J. at 12-14.)  Plaintiffs do not challenge that Defendant has asserted a legitimate, nondiscriminatory reason, but claims the reason is pretextual.  (Pls.' Opp'n to Def.'s Mot. for Summ. J. at 15.)  The Court's independent evaluation finds Defendant has satisfied its "exceedingly light" burden of producing evidence that Plaintiffs' treatment was the result of being understaffed and busy, which is a legitimate, nondiscriminatory reason for failing to seat the Givens.

3.   *Pretext*

Defendant having met its burden, to survive summary judgment Plaintiffs must demonstrate that Defendant's legitimate, nondiscriminatory reason was merely a pretext for race discrimination.  See Benton, 230 F. Supp. 2d at 1369.  A new level of specificity is required at this juncture.  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied 522 U.S. 1045 (1998).  Plaintiffs may satisfy it "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Id. (quotation and citation omitted) (emphasis omitted).  "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable."  Howard v. B.P. Oil Co., 32 F.3d 520, 526 (11th Cir. 1994).

Defendant claims Plaintiffs cannot show pretext for race discrimination because (i) the restaurant was busy and understaffed, (ii) Plaintiffs' comparator evidence does not suggest pretext and (iii) Plaintiffs' argument that the servers violated Waffle House's policy of greeting customers is not persuasive.  (Def.'s Reply in Supp. of Mot. for Summ. J. at 6-8.)  Defendant argues Plaintiffs have "no

evidence that any server acted inappropriately towards them in a racially-suggestive manner."  (Def.'s Mot. for Summ. J. at 14.)  Plaintiffs argue the Court should adopt the Sixth Circuit's *prima facie* analysis, which permits a plaintiff to satisfy the third prong of the *prima facie* case with evidence that the "plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory."  (Pls.' Opp'n to Def.'s Mot. for Summ. J. at 7 n.6 (quoting Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 869 (6th Cir. 2001).)  This Court has not adopted the Christian standard in a directly analogous restaurant accommodation context because "'[t]he test requires a finding of the ultimate issue -- discrimination -- and its operative phrase, 'markedly hostile manner,' is so vague as to be unhelpful . . . .'"  Solomon v. Waffle House, Inc., 365 F. Supp. 2d 1312, 1325 n.4 (N.D. Ga. 2004) ("[W]ithout guidance from the Eleventh Circuit or the U.S. Supreme Court, this Court declines to expand the traditional prima facie test for racial discrimination.") (quoting Benton, 230 F. Supp. 2d at 1378).  The Court again declines to apply the Christian standard, but notes that even if it did, it would not change here the outcome of the Court's analysis of the third prong of the *prima facie* case.  See Slocumb, 365 F. Supp. 2d at 1338 n.5.

The Court has considered all of the evidence, including the evidence presented by Plaintiffs in establishing their *prima facie* case.[13]  Plaintiffs have presented evidence that they were not greeted when they entered the restaurant, that despite that the restaurant servers were aware of their presence they were ignored, including even from placing to-go orders, for approximately thirty minutes, that they placed to-go orders only because a customer placed the order for them, and that they finally received food only when their orders were prepared in response to the order this customer placed for them.  Plaintiffs present further evidence that while they were waiting white patrons were promptly greeted and seated.[14]  That the

---

[13]  Plaintiffs' argument that pretext is demonstrated by the servers' alleged violation of Waffle House's policy that servers greet customers in a friendly manner is not convincing.  (Pls.' Opp'n to Def.'s Mot. for Summ. J. at 17-18.)  That the servers allegedly violated Waffle House's policy by failing to greet the Givens in a timely and friendly manner is no more evidence of race discrimination than it is evidence of some race-neutral explanation such as bad service by distracted, ill-mannered or unmotivated employees.

[14]  Defendant argues one instance of differing treatment between Plaintiffs and the alleged comparators "is insufficient to raise an inference of intentional discrimination as a matter of law," and cites Bobbitt by Bobbitt v. Rage, Inc., 19 F. Supp. 2d 512, 519 (W.D.N.C. 1998), in support of this assertion.  (Def.'s Reply in Supp. of Mot. for Summ. J. at 7-8.)  Bobbitt is distinguishable.  In Bobbitt, the plaintiffs were seated and served with food, albeit allegedly ten to fifteen minutes after a table of white patrons was served.  The court found the plaintiffs had only alleged "bad service."  Bobbitt, 19 F. Supp. 2d at 518-20.  Here, the Plaintiffs claim they were denied the full benefit and enjoyment of dine-in service because of their

restaurant was busy is clear; the Court, however, cannot say as a matter of law that the restaurant was so busy as to prevent the servers from even taking the moment necessary to acknowledge the Givens by at least greeting them and noting their presence.  There are few developed facts of this single, short-term alleged incident. The evidence of discriminatory conduct is admittedly very thin, and is as consistent with a hypothesis of nondiscrimination as it is of discrimination.  But, considering the record as a whole and resolving all doubts in the Plaintiffs' favor, acknowledging that the weighing of evidence and drawing of inferences from the facts are not the Court's function at this stage of a case, the Court finds that Plaintiffs have presented minimally sufficient evidence to create a genuine issue of material fact whether Defendant's proffered legitimate, nondiscriminatory reason is credible.  Therefore, Plaintiffs have met their burden under the <u>McDonnell Douglas</u> framework and have produced sufficient evidence such that based on the record as a whole, a reasonable jury could find intentional discrimination on the basis of race. <u>See</u> <u>Slocumb</u>, 365 F. Supp. 2d at 1340.

---

race.

4.     *Punitive Damages*

Punitive damages under § 1981 are available only where a plaintiff establishes the defendant (i) engaged in discriminatory practices with malice or (ii) acted with reckless indifference to the federally protected rights of the aggrieved individual. Splunge v. Shoney's, Inc., 97 F.3d 488, 491 (11th Cir.1996).  "Malice is defined as 'an intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'"  Solomon, 365 F. Supp. 2d at 1330 (quoting Splunge, 97 F.3d at 491).  "An employer may not be held liable for punitive damages for a server's misconduct unless a plaintiff produces evidence that management ratified or approved the discriminatory acts."  Slocumb, 365 F. Supp. 2d at 1341 (citation omitted).

Defendant claims that because there is no evidence that Defendant's upper management "even knew of, much less ratified or approved," the servers' alleged discriminatory conduct, and Defendant was not recklessly indifferent to Plaintiffs' rights, Plaintiffs' punitive damages claim must be dismissed.  (Def.'s Mot. for Summ. J. at 16.)  Plaintiffs argue that punitive damages are appropriate here because a fact finder could find (i) Defendant's representative handled Ms. Givens' call to complain about the incident in an inadequate manner, (ii) Defendant failed

"to maintain a discrimination-free environment" by failing to enforce its anti-discrimination policies, and (iii) Defendant's efforts to prevent discrimination are "deemed inadequate in light of evidence of pervasive discrimination and/or concealment thereof."  (Pls.' Opp'n to Def.'s Mot. for Summ. J. at 18-24.)

The call that Ms. Givens placed to Defendant, which was fielded by an unidentified employee whose position in the company is unknown, cannot form the basis of a claim for punitive damages.  During the call Ms. Givens placed, she did not inform Defendant of the reason for her call, or even that she wished to lodge a complaint.  The undisputed evidence is that Ms. Givens received all the information she requested from the Defendant's representative and decided, in her discretion, not to inform Defendant of her claim of discrimination or to advise the company of what she alleges occurred at the Defendant's restaurant on November 4, 2001.  Ms. Givens' call is not evidence that Defendant acted in a malicious or recklessly indifferent manner, and it is not evidence that Defendant ratified or approved of alleged discrimination.

Plaintiffs also argue that punitive damages are appropriate because Defendant "fail[ed] to maintain a discrimination-free environment."  (Pls.' Opp'n to Def.'s Mot. for Summ. J. at 20-21.)  Plaintiffs claim this is evidenced by Defendant's

failure to remedy other customer complaints at the restaurant in question.  (See

Customer Complaints, attached as Exs. 6-13 to Decl. of Jason E. Pauls.)  The

evidence of these customer complaints proffered by Plaintiffs is not admissible.

See section II.A.1.a.  Even assuming it was, and the Court is permitted to consider

it on this motion, the customer complaints demonstrate only a few isolated and

sporadic allegations of discriminatory conduct over a five-year period from the

particular Waffle House restaurant Plaintiffs visited.  These complaints  do not

involve any of the Waffle House employees working at the time of the Givens' visit,

and the evidence is that Waffle House investigated the complaints it received.  In

light of the thousands of transactions occurring at the Waffle House during this

time period, Plaintiffs' few discreet allegations, involving employees other than

those on duty at the time the Givens visited the restaurant and which Defendant

looked into and evaluated, are not evidence of "pervasive discrimination" or that

Defendant acted with the requisite state of mind to impose punitive damages.

Plaintiffs next claim punitive damages should be imposed on Defendant

because it failed to enforce its anti-discrimination policies.[15]  Plaintiffs cite the

_____

[15]  The evidence in this case is that Defendant trained both servers who were
working at the Waffle House at the time of the Givens' visit in its non-

declaration of their expert witness, Ms. D. Jan Duffy, Defendant's failure to train

individual employees, and various testimonial evidence in unrelated and isolated

circumstances, see section II.A.1.b, as evidence of Defendant's failure to enforce

its policies.

Viewing the evidence in the light most favorable to Plaintiffs, in its totality,

the record evidence in this case demonstrates sporadic incidents that are not linked

to Plaintiffs' experience.  There is no credible evidence Defendant knew of the

incident Plaintiffs allege because they decided not to report it.  To argue that a

person who fielded a telephone call for information should have discussed that Ms.

Givens was calling because she believed discrimination had occurred is

overreaching and unrealistic.  That the investigations conducted by the company of

the very few historical reports that were made did not result in findings that

discrimination had occurred is evidence of a culture that "failed to maintain a

discrimination-free environment" is, at most, not credible speculation.[16]  That

_____

discrimination policies.  (See Supplementation of Pls.' Summ. J. Opp'n Record
[157] at ¶¶ 14-15; Pls.' Mot. for Leave to Supplement Pls.' Summ. J. Opp'n
Record at 4-8.)

   [16]  Plaintiffs proffer the expert testimony of Ms. Duffy to support their claim
for punitive damages.  (See Duffy Decl., attached as Ex. K to Pls.' Opp'n to
Def.'s Mot. for Summ. J.)  Ms. Duffy is a management practices expert witness.

discrimination was not pervasive is also indicated by the testimony of both

Plaintiffs and their son who each visited Waffle House restaurants on numerous

occasions and had never before witnessed any instance of discrimination.  (DSF

¶¶ 79-81.)

The Court finds that no rational jury could find on this record that Defendant

acted with malice or reckless indifference to Plaintiffs' federally protected rights in

this case.  The Court also finds a rational jury could not find Defendant ratified or

approved of discriminatory conduct because there is no evidence that Defendant

was ever aware that Plaintiffs believed they had been discriminated against until

Plaintiffs filed their complaint in this action.  Accordingly, the Court grants

summary judgment on Plaintiffs' claims for punitive damages.  See Solomon, 365

F. Supp. 2d at 1330 (finding no evidence in the record to support plaintiffs' claims

———————————————

(Id. ¶ 3.)  On the basis of her experience as a former management employment
attorney and business school professor, she states "that the race discrimination
prevention and correction policies, procedures, and practices at Unit 960 and at all
other Waffle House units were, and are, grossly deficient and inadequate."  (Id. ¶
5.)  She concludes that "reliance upon those measures as proof of Waffle House's
reasonable efforts to protect customers' right would also seem to be misplaced."
(Id. ¶ 23.)  Ms. Duffy's critique of Waffle House's general policies is not sufficient
to demonstrate that Defendant acted in a malicious or recklessly indifferent manner
towards Plaintiffs in this case.  The Court also is doubtful that her testimony would
be admissible at trial.

for punitive damages and granting Defendant's motion for summary judgment on these claims); Splunge, 97 F.3d at 491 ("No evidence shows [defendant] failed to become aware of the hostile environment because of any established policy of willful blindness; [defendant] had a general policy against sexual harassment and did investigate the complaints it received. Therefore, we decline to hold that [defendant]'s constructive knowledge of the acts of its employees renders it liable in punitive damages under the Civil Rights Act of 1991.").

5.   *Injunctive Relief*

To obtain injunctive relief, Plaintiffs must show a "real or immediate threat that [they] will be wronged again." Solomon, 365 F. Supp. 2d at 1330.  Defendant claims Plaintiffs lack standing to seek injunctive relief because Plaintiffs have no intention of entering another Waffle House restaurant, experienced no problems during prior visits, and are not aware of other African-American patrons being mistreated at a Waffle House restaurant.

The Court will defer ruling on Plaintiffs' standing to pursue injunctive relief until further evidence is heard on this issue at trial.  Plaintiffs testified they intend not to visit another Waffle House.  (Teresa Givens Dep. Tr. at 174-75; Lloyd Givens Dep. Tr. at 168-69.)  However, their testimony suggests their intentions may

change if Waffle House changes its allegedly discriminatory practices.  (Id.)

Accordingly, summary judgment as to Plaintiffs' proposed injunctive relief is

denied.

      6.    *Laches*

     "To apply laches in a particular case, the court must find both that the

plaintiff delayed inexcusably in bringing the suit and that this delay unduly

prejudiced defendants."  Howard v. Roadway Exp., Inc., 726 F.2d 1529, 1532-33

(11th Cir. 1984) (citation and quotation omitted).  Defendant argues the Court

should dismiss Plaintiffs' claims through application of the laches doctrine because

Plaintiffs delayed in bringing this action and Defendant was prejudiced by Plaintiffs'

delay.  (Def.'s Mot. for Summ. J. at 20-23.)

     Having reviewed Defendant's pleadings and all the evidence in the record,

the Court finds Defendant has not provided the Court with a sufficient factual or

legal basis[17] to find Plaintiffs delayed inexcusably in bringing this action.  The Court

_____

    [17]  In EEOC v. Dresser Indus., Inc., 668 F.2d 1199, 1201 (11th Cir. 1982), the Court found the EEOC waited five years and eight months to process a claim and that such delay was "intolerable."  See also Hefner v. New Orleans Public Serv., Inc., 605 F.2d 893, 897 (5th Cir. 1979) (involving an attack of a consent decree; "to allow plaintiff to attack the decree at this late point would severely undercut important notions of judicial efficiency and finality of judgment, and

also finds that Defendant cannot credibly claim it has been prejudiced.  Defendant

claims it was prejudiced because (i) it has not been able to locate either server on

duty when Plaintiffs visited the Waffle House, and (ii) it is unlikely either server

would recall the Plaintiffs or the alleged incident.  (Def.'s Mot. for Summ. J. at 22.)

Defendant's first claim of prejudice is moot after Plaintiffs deposed Debra Phillips

and Stephanie Wells, the servers who were allegedly working at the time of

Plaintiffs' alleged visit.  (See Def.'s Notice of Add'l Factual Development and Mot.

for Leave to Supplement the Record [143]; Def.'s Notice of Add'l Factual

Development and Supplementation of the Summ. J. Record [158].)  That neither

server could remember the Givens or the night they visited the Waffle House does

not mean Defendant was unduly prejudiced.  Under Defendant's theory of the case,

the Givens' visit to the restaurant involved "an uneventful to-go order that resulted

in no complaint or conversation."  (Def.'s Mot. for Summ. J. at 22.)  It is likely that

neither server would have remembered this event even if Plaintiffs had filed suit in

_____

would unfairly prejudice other parties and non-parties.").

-32-

closer proximity to the events alleged, and the Court cannot say as a matter of law

that Plaintiffs' delay resulted in undue prejudice to Defendant.[18]

    D.    <u>Section 2000a Claims</u>

Plaintiffs also bring a claim for racial discrimination in the denial of a public

accommodation in violation of 42 U.S.C. § 2000a.  Section 2000a provides:

> All persons shall be entitled to the full and equal
> enjoyment of the goods, services, facilities, privileges,
> advantages, and accommodations of any place of public
> accommodation, as defined in this section, without
> discrimination or segregation on the ground of face,
> color, religion, or national origin.

42 U.S.C. § 2000a.  To establish a claim under § 2000a, a plaintiff must

demonstrate that he (1) is a member of a protected class, (2) attempted to contract

for services and afford herself the full benefits and enjoyment of a public

accommodation, (3) was denied the full benefits or enjoyment of a public

accommodation, and (4) such services were available to similarly-situated persons

---

[18]  The parties' gratuitous speculation that "There appears to have been a calculated effort in this case to conceal the whereabouts of these witnesses until it was to Waffle House's advantage to disclose them," (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 30), and that "Plaintiffs' citation . . . [is] deliberately deceptive at worst," (Def.'s Reply in Supp. of Mot. for Summ. J. at 13 n.11), are not helpful to the Court in its attempt to reach a just result in this case.

outside his protected class who received full benefits or were treated better.

Benton, 230 F. Supp. 2d at 1382 (citation omitted).  The inquiries for a § 2000a

claim and § 1981 claim are substantially similar and the parties have briefed them as

such.  (See Pls.' Opp'n to Def.'s Mot. for Summ. J. at 8 n.7.)  For the reasons set

forth *supra*, the Court denies Defendant's motion for summary judgment on

Plaintiffs' § 2000a claim.

## III.    CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment [107] is **GRANTED IN PART and DENIED IN PART**.  Defendant's

motion is **GRANTED** as to Plaintiffs' claims for punitive damages, and **DENIED**

as to Plaintiffs' other claims.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to

Supplement the Record [143, 144] and Plaintiff's Motion for Leave to Supplement

Plaintiffs' Summary Judgment Opposition Record [147] are **GRANTED**.

**SO ORDERED**, this 25th day of January, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE